William Donald TURK, Appellant,

v.

UNITED STATES of America,
Appellee.

Roswell William WIXOM, Appellant,

v.

UNITED STATES of America,
Appellee.

Robert Douglas BRITTON, Appellant,

v.

UNITED STATES of America,
Appellee.

George Leo COLEMAN, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 19872, 19873, 19889, 19905.

United States Court of Appeals,
Eighth Circuit.

Aug. 27, 1970.

Samuel P. Caniglia, of Caniglia & Seminara, Omaha, Neb., made argument for appellant William Donald Turk.

Samuel V. Cooper, Omaha, Neb., made argument for appellant Roswell William Wixom.

John Grant, of Kelley, Grant, Costello & Dugan, Omaha, Neb., made argument for appellant Robert Douglas Britton.

David S. Lathrop, of Lathrop & Albracht, Omaha, Neb., made argument for appellant George Leo Coleman.

One brief was filed by all the above attorneys for the appellants with the exception that Michael J. Dugan, of Kelley, Grant, Costello & Dugan, Omaha, Neb., was on the brief instead of Mr. Grant of this firm who made the argument.

William J. Tighe, Asst. U. S. Atty., Omaha, Neb., for appellee; Richard A. Dier, U. S. Atty., was on the brief with Mr. Tighe.

Before MATTHES, Chief Judge, and LAY and HEANEY, Circuit Judges.

LAY, Circuit Judge.

Defendants appeal their conviction for possession of counterfeit notes of the United States with intent to defraud in violation of 18 U.S.C.A. § 472. The defendants were arrested in Omaha, Nebraska, on the morning of November 16, 1968, in possession of counterfeit $20 bills totalling approximately $80,000. The basic issue on appeal, which is raised by all defendants, concerns the existence of probable cause for their arrest to justify the warrantless search. Error is also asserted by the defendant Wixom as to the sufficiency of the evidence to sustain his conviction and in the trial court's denial of a requested instruction on constructive and joint possession. We reverse and remand for further proceedings on the question of probable cause.

The testimony of the government relating to the arrest and search, produced at the hearing on the motion to suppress the evidence seized, may be briefly summarized. Sometime prior to the arrest,

Sgt. Perry of the Omaha Police Department had been told by a fellow police officer, Sgt. Gentleman, that there had been reports of Collins Radio Laboratory checks being passed in the Cedar Rapids, Iowa, area. Collins Radio Laboratory is located in Cedar Rapids. On October 24, 1968, an Omaha photo engraving company had reported to the police that the defendant Wixom, under what was later discovered to be a false identity, had brought to the company a Collins Radio check, and purchased a negative of the check with the amount and the name of the payee taped out. The following day Wixom was observed by Omaha police entering the photo engraving company; he was driven to and from the company by the defendant Coleman, who was known, at the time of the arrest, to be in the printing business. Surveillance of these defendants was reactivated on November 15, presumably because of the passing of Collins Radio checks in the Cedar Rapids area. Coleman was stopped in Omaha that day on the pretext that he was driving a stolen car. It was then observed by a police officer that Coleman had a green substance under his fingernails. He was immediately released and thereafter followed to the Town House Motel, Room 116. At approximately 1:00 o'clock in the afternoon the defendant Turk, known by local police to be a "dangerous character," arrived in a Buick convertible with an Iowa license plate and was observed going into the same room. The registration of this car was traced to Lynn County, Iowa (of which Cedar Rapids is the county seat). The defendants Britton and Wixom were also observed entering Room 116. Britton resembled an individual wanted in Cedar Rapids. The police carried on the surveillance throughout the day and evening. During the day Coleman was observed carrying a light bar and later a machine (which was subsequently identified to be a photocopier) into the room. The evidence showed that later in the evening the officers conducting the surveillance could hear machinery running in the room.

At 1:30 a. m. on the following morning, November 16, 1968, the four defendants emerged from the motel room carrying attache cases and suitcases to their cars. When they placed the cases in their two vehicles the officers conducting the surveillance became concerned over the defendants' impending departure. Without warrants the police drew their guns and placed the defendants under arrest. The defendant Turk was brought back to his car and asked what he had put in the trunk, which was still partially open. Turk denied ever having seen a black attache case within the trunk and volunteered to open it. When he did so, the officers observed that it was filled with counterfeit $20 bills in sheets, six to a sheet. The men were then again informed they were under arrest and taken to the Central Police Station. The government urges that the warrantless arrest and search were justified by the probable cause of the police to believe that the defendants were departing the scene with evidence relating to the printing of counterfeit checks.

In its appellate brief the government refers to additional evidence of probable cause contained in the transcript of the preliminary hearing held before the United States Commissioner on December 3, 1968. This testimony was not presented to the district court and was not otherwise made a part of the record on this appeal. Fed.R. App.P. 10(a). However, in the interest of justice this court may order the record enlarged for purposes of reviewing the issue of probable cause. See Washington v. United States, 130 U.S.App.D.C. 374, 401 F.2d 915, 919 n. 19 (1968); Gatewood v. United States, 93 U.S.App. D.C. 226, 209 F.2d 789, 792–793 (1953).

The preliminary hearing transcript discloses that in the latter part of September, 1968, Sgt. Perry was assigned by a Capt. Platner to investigate "counterfeited or spurious checks that were being passed in the city of Omaha."

At first Perry said he believed these were Collins Radio Laboratory checks. On cross-examination he said these "spurious" checks were Allstate Insurance Company checks passed in Omaha. He said he learned of these checks through the F.B.I. He started his investigation with the surveillance of Wixom because of the report that Wixom had purchased a negative of a Collins Radio check.

The search itself was wholly dependent upon and incident to the warrantless arrest. It is well settled that state law, within the confines of the United States Constitution, determines the validity of arrests without warrants. United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210 (1948). Nebraska law permits an arrest without warrant only where the crime is committed in the presence of the arresting officer or where a felony is committed of which he had reasonable cause to believe the defendant guilty.[1] Neb.Rev.Stats. § 29–404.02 (1967 Cum.Supp.). State v. Beasley, 183 Neb. 681, 163 N.W.2d 783 (1969); State v. Watson, 182 Neb. 692, 157 N.W.2d 156 (1968); State v. Cook, 182 Neb. 684, 157 N.W.2d 151 (1968). Therefore, it must be determined from the record whether the officers possessed sufficient knowledge of facts and circumstances to warrant a prudent man in believing that the defendants had committed a felony. This is the test of probable cause. Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

In evaluating all of the evidence to justify the warrantless arrest and search, we adhere to well-established standards. First, the government concedes that the disclosure of the counterfeit bills, discovered subsequent to the arrest, cannot serve as probable cause to justify the arrest. See Henry v. United States, supra. Second, we approach the record with the admonition that where the search is based upon a police officer acting without benefit of a warrant and therefore without a magistrate's determination of probable cause, the evidence must be of a *more* "persuasive character." Aguilar v. Texas, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Jones v. United States, 362 U.S. 257, 270, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Miller v. Sigler, 353 F.2d 424 (8 Cir. 1965), cert. denied 384 U.S. 980, 86 S.Ct. 1879, 16 L.Ed.2d 690 (1966). As pointed out in Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 229, 13 L.Ed.2d 142 (1964):

> "An arrest without a warrant by- passes the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the arrest or search too likely to be subtly influenced by the familiar shortcomings of hind-sight judgment. 'Whether or not the requirements of reliability and particularity of the information on which an officer may act are more stringent where an arrest warrant is absent, they surely cannot be less stringent than where an arrest warrant is obtained. Otherwise, a principal incentive now existing for the procurement of arrest warrants would be destroyed.' Wong Sun v. United States, 371 U.S. 471, 479–480, 83 S.Ct. 407, 9 L.Ed.2d 441."

Third, where information on which the police base the warrantless arrest is not obtained by direct observation, probable cause must be established by (1) proof of the reliability of the informant *and* (2) the underlying circumstances as to how the informant came by his knowledge. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

---

1. At common law reasonable cause to believe the defendant guilty of an offense committed in another state may also constitute grounds for arrest without a warrant. Cf. State v. Klein, 25 Wis.2d 394, 130 N.W.2d 816 (1964), cert. denied Sterger v. Wisconsin, 380 U.S. 951, 85 S.Ct. 1083, 13 L.Ed.2d 969 (1965). There is no contradiction to this principle found in the Nebraska cases.

The difficulty with the present record is the ambiguity as to the underlying circumstances showing how the Omaha police knew any kind of "spurious" or "forged" Collins Radio checks were being passed in either the Omaha or Cedar Rapids area. The government concedes that proof of Wixom's purchase of the negative of the Collins Radio check, without more, did not justify a warrantless arrest. The activities at the Town House Motel on November 15 may have been suspicious, but the police were not made aware of any felonious conduct by such activity. Cf. Spinelli v. United States, supra, 393 U.S. at 414, 89 S.Ct. 584. The fact that other officers at one time told Sgt. Perry, who testified at the hearing on the motion to suppress, that counterfeit checks were being passed establishes only the reliability of the informants. United States v. Ventresca, supra; McCreary v. Sigler, 406 F.2d 1264 (8 Cir. 1969), cert. denied 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969). One is still left to speculate whether those other officers obtained their information from an unreliable source or from a reliable source who acted only upon an unverified rumor. Cf. Spinelli v. United States, supra.

The fact that the F.B.I. had told the police of the passing of forged Allstate Insurance Company checks in Omaha is too remote to connect the defendants with the activity of which they were suspected. The present record reveals none of the underlying circumstances as to the information the police received concerning the passing of forged Collins checks. We deem this significant in the present case because the police must have been able to make the necessary inference that there existed a definite nexus between the defendants' purchase of a negative of a Collins Radio check and the *alleged* passing of forged Collins Radio checks either in Cedar Rapids or Omaha. These essential facts when related to all other factual circumstances must justify probable cause that *these defendants* had committed an offense.

■ As we have outlined, the prerequisite of proof as to probable cause is deficient. We sense the government shares this same feeling of inadequacy by its attempted reliance in this court on the evidence outside of the official record, taken at the preliminary hearing. It is somewhat difficult to understand why if the police possessed prior knowledge of felonies committed in the very city (Omaha) where the defendants were under surveillance, as related in the preliminary hearing, the government at the hearing on the motion to suppress relied solely on an alleged occurrence of a remote offense in another state and city. Sgt. Perry testified that he obtained his knowledge of the actual passing of counterfeit checks from Capt. Platner (preliminary hearing) or from Sgt. Gentleman (motion to suppress). The latter testified at trial; neither testified at the hearing on the motion to suppress. This leads us to believe that there may be additional evidence relating to the foundation and corporate knowledge[2] upon which the Omaha police were acting which could have been brought out by the government in the hearing before the district court.

The defendant Wixom has additionally attacked the sufficiency of the evidence to sustain his conviction. He likewise urges error in the district court's refusal to more specifically instruct the jury as to the law on constructive and

---

2. "[P]robable cause is to be evaluated by the courts on the basis of the collective information of the police rather than that of only the officer who performs the act of arresting. * * * The knowledge or information of the arresting officer at the time of arrest is relevant only where an arrest is predicated on that officer's personal observations and information concerning the criminal act. The correct test is whether a warrant if sought *could have* been obtained by law enforcement agency application which disclosed its corporate information, not whether any one particular officer could have obtained it on what information he individually possessed." Smith v. United States, 123 U.S.App.D.C. 202, 358 F.2d 833, 835 (1966), cert. denied 386 U.S. 1008, 87 S.Ct. 1350, 18 L. Ed.2d 448 (1967).

joint possession. We are satisfied from a reading of the record that the totality of evidence is sufficient to convict all of the defendants, including the defendant Wixom, of the offense charged. The jury could make a finding of constructive possession of the counterfeit notes by all defendants. The evidence demonstrates as to each defendant a sufficient inference of community of interest in the illegal activities. We are further satisfied that the court's charge taken as a whole was fair and accurate and defendant's requested instruction was unnecessary.

██ Although we find the present record inadequate to establish probable cause for the defendants' arrest, under the circumstances we feel the administration of justice will be best served by remanding this case to the district court for a further hearing on the question of probable cause.[3] We think the Omaha police officers should have the fullest opportunity to disclose their complete information in factual rather than conclusory terms before the district court. We see no prejudice to the defendants in our order of remand. The issue does not relate to defendants' guilt or innocence, but bears only on the significant preliminary question relating to the alleged constitutional violation of the Fourth Amendment. As the Supreme Court has observed in a similar situation:

"We should not lose sight of the fact that the Government's new showing does not relate to an issue submitted to the jury in the proceedings below, but rather to a preliminary question as to the admissibility of evidence. Hence, to grant the Government's motion is not to permit it to 'bolster' the evidence upon which the verdict of guilty was returned by the jury in this case. That verdict clearly must stand or fall on the sufficiency of the evidence already introduced at the trial." United States v. Shotwell Mfg. Co., 355 U.S. 233, 244, 78 S.Ct. 245, 252, 2 L.Ed.2d 234 (1957).

The judgments of conviction are vacated. The cause is remanded for the district court to hold a new hearing on the motion to suppress; in the event the district court finds that probable cause existed to make the arrests the court may then reinstate the judgments of conviction, or if not, order a new trial as may be proper.

It is so ordered.

---

3. Such procedure is only permissible under special circumstances. Giordenello v. United States, 357 U.S. 480, 488, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). It is apparent from the references to the preliminary hearing, from the lack of foundational evidence, and the ambiguity of the testimony, that the district court did not hear all of the evidence available. We find under these circumstances that remand is justified. Cf. United States v. Wade, 388 U.S. 218, 242, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Jackson v. Denno, 378 U.S. 368, 394, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).