STATE OF NEBRASKA, APPELLEE, v. EDDIE ADDISON, APPELLANT.

249 N. W. 2d 746

Filed January 26, 1977. No. 40781.

Charles Plantz, for appellant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellee.

Heard before SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

Defendant was convicted of the crime of uttering a forged instrument. He alleges three assignments of error. (1) The insufficiency of the evidence to sustain a conviction. (2) The refusal to allow the public defender to withdraw, and denying a continuance so defendant could have other counsel. (3) In finding defendant to be an habitual criminal. We affirm.

On May 29, 1975, a person alleged to be the defendant purchased a case of beer at Harry's Off Sale in Whiteclay, Nebraska. He gave Harry Heffron, the manager, a check in the amount of $36, received the case of beer worth $6.50, and the balance in cash. The check was payable to Eddie Addison, signed by Freeman Rapp, and bore the notation, "For Wages." It was dated May 29, 1975, and drawn on the Stockmans National Bank, Rushville, Nebraska. It was returned by that bank with the notation, "no account."

Heffron identified the defendant as the person who had cashed the check, and testified defendant told him the check was for wages for work done for Freeman Rapp. Heffron did not know anyone named Freeman Rapp, but his partner told him over the phone that Freeman Rapp's checks were good. The partner testified that he had accepted Freeman Rapp's checks be-

fore and that he did not know any other person in the area by the name of Freeman Rapp other than the one whose checks he had cashed.

Freeman Rapp testified that he had not drawn the check. It did not bear his signature and he did not have an account in the Stockmans National Bank. He further testified he had not authorized anyone to draw checks in his name. He lived in South Dakota about 60 miles from Rushville, Nebraska, and he had no knowledge of anyone else in the vicinity with the name of Freeman Rapp. He also testified he did not believe he had ever met the defendant.

The assistant cashier of the Stockmans National Bank testified no Freeman Rapp had an account in the bank on May 29, 1975, and that she did not know anyone by the name of Freeman Rapp. The deputy sheriff, who had served the .subpoena on Freeman Rapp, testified that he knew no other Freeman Rapp in the area.

Defendant was arraigned and bound over to the District Court on July 21, 1975. The public defender was appointed to represent him. Defendant pled not guilty and trial was set for September 22, 1975. Defendant failed to appear at that time. Trial was rescheduled for February 2, 1976. An amended information was then filed, charging defendant with being an habitual criminal.

On January 26, 1976, the public defender filed a motion requesting leave to withdraw. On February 3, 1976, prior to the selection of a jury to try the defendant, defendant, through the public defender, presented a motion for a continuance. After inquiry of the parties, the court overruled the request for a continuance. A jury was then empaneled with one alternate juror, and the court continued the trial to the jury to February 12, 1976.

Before the commencement of the trial on February 12, 1976, defendant's counsel moved for a continuance.

He stated the defendant wished to obtain counsel of his own choice who would handle the case but would need a continuance because the new counsel was not ready to go ahead. The motion for continuance was overruled and the case proceeded to trial.

We first consider the overruling of defendant's motion for a continuance. The only reason the defendant gave for his dissatisfaction with the public defender was his belief that the public defender was not interested in his welfare. The matter of granting a continuance in a criminal case is peculiarly within the discretionary judgment of the trial court. State v. Coleman (1973), 190 Neb. 441, 208 N. W. 2d 690. Defendant made no showing as to any reason for his dissatisfaction with appointed counsel. What we said in State v. Coleman, *supra,* is particularly apt herein and is controlling: "This case directly raises the issue of the right of a criminal defendant to seek substitute counsel on the very eve of trial without demonstrating a good cause therefor, when the record shows that he has been represented throughout by court-appointed counsel in a diligent and competent manner. We hold that the right of counsel, accorded under the Sixth Amendment, cannot be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice. Requests for the appointment of new counsel on the eve of trial should not become a vehicle for achieving delay. United States v. Llanes, 374 F. 2d 712 (2d Cir., 1967), cert. den., 388 U. S. 917. See, also, Ungar v. Sarafite, 376 U. S. 575, 84 S. Ct. 841, 11 L. Ed. 2d 921."

We next consider defendant's motion to dismiss on the sufficiency of the evidence. The check was payable to the defendant. It bears his purported endorsement. The State's witness positively identified the defendant as the person who passed the check. Defendant attempted to discredit this identification on the basis that the witness could not remember details about

what the person was wearing, whether he was alone, what day of the week it was, or whether there were other customers in the store. These, of course, all go to the credibility of the witness. A jury question was presented. The jury resolved the question against the defendant by finding him guilty. The State's evidence was ample to support the finding.

Defendant's third assignment related to the habitual criminal proceedings. Records of three prior felony convictions were introduced. The court relied on two of those convictions in finding the defendant to be an habitual criminal, because the third one was then pending in this court on appeal. That appeal was from the same court on another conviction for uttering a forged instrument. We have since affirmed that conviction. It is found at 196 Neb. 768, 246 N. W. 2d 213 (1976). We note that reference was made therein to another case of like nature involving the defendant, 191 Neb. 792, 217 N. W. 2d 468 (1974), in which we reversed and remanded a similar charge for a deficiency in the proof.

The other two convictions which were considered by the District Court were a 1963 conviction in Scotts Bluff County, Nebraska, which involved a forged instrument, and a 1969 conviction in Pennington County, South Dakota, for third-degree forgery.

In the Scotts Bluff County conviction, the defendant on February 11, 1963, was sentenced in the District Court for Scotts Bluff County as Edison Clown Horse to 3 years in the Nebraska Penal Complex after a plea of guilty. This record includes the fingerprint records of Edison Clown Horse, which were identified as matching those of the defendant.

Defendant objected to the introduction of exhibit 5, which was the certified copy of his conviction, certified by the clerk and authenticated by the seal of the office. The objection was properly overruled. In State v. Micek (1975), 193 Neb. 379, 227 N. W. 2d 409, we

said: "A judicial record of this state, or of any federal court of the United States, may be proved by the production of the original, or by a copy thereof, certified by the clerk or the person having the legal custody thereof, authenticated by his seal of office, if he has one."

Exhibit 7 is a certified copy of the conviction in South Dakota. It shows that on the 31st day of October 1969, the defendant, Eddie Addison, also known as Edison Clown Horse, entered a plea of guilty to a charge of third-degree forgery. He was sentenced to a term of 4 years in the South Dakota State Penitentiary. There is no objection to the introduction of this exhibit in the record.

The defendant states in his brief: "There is no question as to the State's having established twice convicted and twice sentenced. The defendant contends, however, that it was not adequately established that he was the person who was so convicted and sentenced." There was positive proof that Eddie Addison, the defendant herein, was also one and the same person as Edison Clown Horse. Additionally, as noted above, the fingerprints of both defendant and Edison Clown Horse were compared and testimony was adduced that they matched and were made by one and the same person. It borders on the frivolous to argue that defendant was not one and the same person as the defendant covered in the records to prove the habitual criminal charge.

The defendant further argues that the record does not contain proof that the defendant was actually twice committed to prison. Defendant's argument has previously been answered in State v. Bundy (1966), 181 Neb. 160, 147 N. W. 2d 500. In that case we stated: "In Rains v. State, 142 Neb. 284, 5 N. W. 2d 887, this court in its opinion stated: 'Defendant urges that proof of commitment, as required by the habitual criminal law, was lacking. We think not. Another statute, section 29-2401, Comp. St. 1929 (now section 29-2401, R.

R. S. 1943), provides that within 30 days after sentence, unless execution thereof be suspended, the convicted person shall be delivered to the warden of the penitentiary, together with a copy of the sentence of the court, there to be kept until the sentence is served or a pardon granted. If sentence is suspended and the conviction subsequently affirmed, the same procedure is prescribed. It must necessarily be presumed in the absence of any evidence to the contrary that the directions of the statute (section 29-2401, R. R. S. 1943), were carried out by the public officers involved. We think the proof offered is in all respects sufficient to sustain the finding of prior convictions within the meaning of section 29-2217, Comp. St. Supp. 1939 (now section 29-2221, R. R. S. 1943).' The Illinois statutes on this point are not shown, but: 'In the absence of the common law or statutes of any other jurisdiction in the United States being pleaded and presented, we will presume the common law or statutes of such other jurisdiction to be the same as ours.' Scott v. Scott, 153 Neb. 906, 46 N. W. 2d 627, 23 A. L. R. 2d 1431. The defendant's contention that the trial court erred in finding him a habitual criminal and sentencing him as such has no merit."

The record does not sustain defendant's contentions with respect to any of the errors urged by him. The judgment is affirmed.

AFFIRMED.